## THE PEORIA & ROCK ISLAND RAILWAY COMPANY

*v.*

## JAMES M. RICE, ADMR.

RIGHT OF WAY — *party to proceeding, on owner's death.* In a proceeding to condemn land by a railway company for right of way under a special statute which passed the fee in the land taken upon payment of the

damages assessed, and which required the court to render judgment upon the report of the commissioners in case no appeal was taken from their assessment, both parties appealed and a trial was had, and the company procured a reversal for error. The land owner having died, the cause was re-docketed in the name of his administrator, the company's appeal dismissed for want of prosecution, and thereupon the administrator dismissed the appeal of his intestate, electing to take the damages as found by the commissioners, which had been deposited: *Held*, that, as the fee in the lands descended to the intestate's heirs at law, they should have been made parties, so as to conclude them by the judgment, and for the error in not making' them parties, the judgment of the court was reversed.

APPEAL from the Circuit Court of Peoria county; the Hon. J. W. COCHRAN, Judge, presiding.

Messrs. INGERSOLL & PUTERBAUGH, for the appellant.

Mr. H. B. HOPKINS, and Messrs. McCULLOCH, STEVENS & WILSON, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Appellant took proper preliminary steps, and procured the appointment of commissioners to assess damages for its right of way across certain lands claimed to be owned by one Thomas Bryant. From the report of damages assessed by the commissioners, both parties appealed to the Circuit Court, where the appeals were consolidated and heard as one case, at the November term, 1869. Appellant prosecuted an appeal from the judgment then rendered to this court, and the case was submitted at the September term, 1870, but no judgment was rendered until the 5th of November, 1872, when it was ordered that the judgment of the court below be reversed and the cause remanded. Prior to the judgment of reversal in this court, and on the 17th of May, 1872, Thomas Bryant died intestate. At the January term, 1873, of the court below, the counsel now representing appellee appeared in that court, had the case re-docketed, suggested the death of Bryant, and asked and obtained leave of the court to prosecute the suit in the

name of James M. Rice as his administrator. No notice seems to have been given the counsel of appellant prior to the re-docketing of the case; but at the May term, 1873, counsel for appellant appeared and waived such notice, and an order was then entered, re-docketing the case, entitled the same as before, and a continuance was ordered. At the January term, 1874, appellant's counsel being absent, on motion of counsel for appellee, the appeal of appellant was ordered by the court to be dismissed, and thereupon the counsel for appellee also dismissed the appeal of Bryant.

The court then further ordered that the $5,000, previously deposited by appellant with the clerk of the court, be paid to appellee. Subsequently, on the twenty-third of February following, the court rescinded the order directing the payment of the $5,000 to appellee, and directed that it be returned to the clerk. On the 4th of March, 1874, appellant, by its counsel, entered its motion, supported by affidavits then filed, to vacate the order dismissing its appeal, and to be allowed to appear and defend. This motion the court overruled. Appellant excepted, and appealed to this court.

Numerous questions arising upon the record have been discussed in argument, but we are of opinion that it is necessary to notice but a single one.

Appellant was incorporated by an act of the General Assembly approved March the 7th, 1867. Private Laws of 1867, vol. 2, p. 659. By the sixteenth section of that act, it is authorized to institute proceedings and have lands for its right of way, etc., condemned under the provisions of "An act to incorporate the Mississippi Railroad Company," approved February the 15th, 1865. Private Laws of 1865, vol. 2, p. 172. One of the clauses in the fifth section of the last-named act is as follows:

"Whenever any judgment shall have been entered, as hereinbefore provided, for the value of any lands, or for any damages for the taking and using the same, and the amount specified in such judgment shall have been paid or tendered to the owner

or owners of such lands, his, her, or their legal representatives, on the payment of the amount specified in such judgment, or in such report of the commissioners, to the clerk of the court to which any appeal under this act may have been taken, the said company shall be entitled to the said lands in fee; and if such valuation be not received when tendered, it may at any time thereafter be received, or may be collected from said company, without interest, by action at law, at the cost and expense of the person or persons entitled to the same; *provided*, such valuation shall not have been paid to the clerk of the court in which such appeal may have been taken; and *provided*, that the costs of any proceedings and judgments specified in this act shall be taxed by the court and paid by said company, except in cases where, upon appeal, the verdict of the jury shall be for the same or less sum than that reported by the said commissioners."

A previous clause of the same section requires the report of the commissioners to be filed with the clerk of the Circuit Court of the county in which the land sought to be condemned lies, and authorizes judgment to be rendered thereon, on motion of either party, provided an appeal shall not be taken from the award of the commissioners as therein provided.

From the language quoted, it would seem too plain to admit of serious controversy that the entry of judgment on the report of the commissioners must be had before any title to the property condemned can vest in appellant. When this judgment is rendered, and the amount is paid, or has been previously tendered, as therein specified, the language is, " the said company shall be entitled to the said lands in fee;" and the result, by necessary implication, is, until then no title shall be vested. It might be that the amount of the judgment would be so large that it could not be paid by the company; or still, if within its ability to pay, so large that the interests of the stockholders would require that the location be abandoned and another one less expensive adopted. It would seem, in the absence of any public end to be subserved by adhering to the location, that in

such case it might well be abandoned, and with it all claim to the property sought to be obtained by condemnation. In that event, the liability of appellant would, of course, extend to the injury occasioned to the owner by the entry upon, and temporary occupancy of, his premises, but no farther. Similar views have been expressed in considering charters containing like language with that quoted by the Supreme Courts of the United States and of several of our sister States. *Baltimore & Susquehanna Railway* v. *Nesbit*, 10 How. (U. S.) 395 ; *Stacy* v. *Vermont Central Railway Co.*, 27 Vt. (1 Williams) 39.

Although appellant is, by its charter, authorized to enter upon and occupy lands for its right of way, etc., preliminary to judgment of condemnation, it necessarily follows, from what has been said, this, of itself, gives no right to recover for the value of the land as so much land actually taken. At most, the right can only be to recover for the injury sustained by the entry and occupancy. The present proceeding is, however, prosecuted under the section quoted from the act of 1865 for the condemnation of the *land taken*, and to thereby vest appellant with the title. When Bryant died, no title was vested in appellant, nor was it entirely certain that any ever would be. The amount which would have to be paid for the land taken remained to be determined, as well as the further fact whether that amount would be paid, or the location be abandoned. The cases cited by appellee, where the administrator is held to be entitled to recover for the value of real estate sold by his intestate, are not analogous. There, the recovery was upon an express contract, concluded between the parties in the lifetime of the intestate, while here, there was no such contract, either express or implied, at the time of the intestate's death. Nor do we think the condemnation cases cited by him pertinent. They are predicated upon language entirely different from that we have been considering. We are governed, in the case at bar, solely by appellant's charter and its peculiar phraseology relating to condemnation, and we believe no case can be found anywhere

in which such language has received a different construction from that which we have given it.

There having been, then, no present vested right of recovery for the value of the property in Bryant, at the time of his death, against appellant, it is impossible that any cause of action in respect thereof could have survived to his administrator. The land descended to his heirs at law, and they, and not the administrator, were the proper parties to the proceeding.

It is suggested that the administrator might, notwithstanding he was not a proper party to the proceedings, litigate for the benefit of the heirs. Inasmuch as appellant's only mode of acquiring title to the property sought to be taken is through the judgment to be rendered, it can hardly admit of doubt that the owners of the property must be parties to the judgment in order that they shall be bound by it.

The judgment is reversed and the cause remanded.

*Judgment reversed.*